# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

By tblanchard at 2:25 pm, Jun 05, 2017

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR417-066 |
| ) | |
| EVEROL PALMER ) | |

## REPORT AND RECOMMENDATION

Was the defendant under custodial interrogation, or just innocuously nudged, when he incriminated himself? That question often arises in *Miranda*[1] cases where custodial defendants incriminate themselves prior to formal interrogation. Indicted on drug and gun charges, doc. 1, Everol Palmer raises that question here by moving to suppress his statements. Doc. 12. But he submitted no S.D. L. Cr. R. 12.1 statement many use to establish the factual dispute necessary to

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966). For the most part *Miranda* prevents the government from using against a defendant his "interrogation" statements made while in custody -- unless he has been advised of, then validly waived, his rights to remain silent and to assistance of counsel. In fact, "*Miranda* warnings are required before any statement may be admitted into evidence at trial which was elicited from a person in custody through interrogation." *United States v. Adams*, 1 F.3d 1566, 1575 (11th Cir. 1993); *Garcia v. Singletary*, 13 F.3d 1487, 1489 (11th Cir. 1994) ("A custodial interrogation occurs whenever law enforcement officers question a person after taking that person into custody or otherwise significantly deprive a person of freedom of action.") (quotes and cite omitted). Here there is no dispute that the statements at issue were made while the defendant was in custody.

1

justify an evidentiary hearing.[2] Instead, he relies on his arresting officer's police report. From Palmer's brief:

> The Government alleges that on the evening of October 21st, 2016, Defendant Palmer was a passenger in a vehicle initially subjected to a traffic stop for an inoperable headlight by Officer Jeffrey Allmond of the Hinesville Police Department. . . . Allmond states that Defendant Palmer was removed from the vehicle and subjected to a search of his person where a firearm was located. Officer Allmond states that he smells the scent of marijuana coming from Defendant Palmer's person. Suspecting Defendant Palmer possesses marijuana, a second search of Defendant Palmer's person is conducted by a second officer at Officer Allmond's insistence. After a second search of Defendant Palmer's person, no marijuana was found according to Officer Allmond. Without knowing if Mr. Palmer was a convicted felon, he was placed under arrest and advised that his arrest was a result of his carrying a firearm without a weapons carry permit.

Doc. 12 at 1-2. That much of the story is undisputed, doc. 19 at 8-11, and supported by Allmond's report, doc. 19-1 at 6. Palmer then continues, placing a bit of a spin on the reported factual assertions:

> Officer Allmond's report then states that while transporting Defendant Palmer to the Hinesville Police Department he observed

---

[2] *See United States v. Jefferson*, ___ F. Supp. 3d ___, 2017 WL 1015325 at * 2 (S.D. Ga. Mar. 15, 2017) (applying S.D. L. Cr. R. 12.1 to deny a hearing on Jefferson's suppression motion; his conclusory assertion -- that the roadblock/safety checkpoint at which he was stopped was not conducted in accordance with the laws controlling such including, but not limited to, minimum constitutional prerequisites -- was insufficient to satisfy Rule 12.1 and case law requiring that suppression motions be in every critical respect be sufficiently definite, specific, detailed, and nonconjectural; Jefferson advanced only a legal conclusion and cited no factual support for his motion) (citing *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000), and *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985)).

Defendant Palmer "move around" in the backseat of the patrol car. Officer Allmond reports hearing [t]he sound of "plastic crinkling in the backseat [sic]." Officer Allmond's report then carefully goes on to discuss his state of mind at the time and how he was thinking of a search of his backseat conducted at the start of his shift and how knew [that there was] no plastic in the backseat. Officer Allmond further explains that he was at that moment conscious of his belief that that "no other prisoners were in the backseat [sic] of my vehicle prior to Mr. Palmer." In this state of mind (and having already suspected that Defendant Palmer possessed marijuana to such a degree he ordered a secondary search of Defendant Palmer's person), Officer Allmond elects to *interrogate* Mr. Palmer about his alleged conduct.[3] It is then that Defendant Palmer allegedly responds to Officer Allmond's questioning by stating that "he did not want to be searched again, and was giving me what I was looking for."

Officer Allmond then reports that upon arrival to the Hinesville Police Department, Defendant Palmer was removed from the patrol car and Officer Allmond located a "bag of marijuana on the seat next to where [Mr. Palmer] was sitting."

At no point in his report does Officer Allmond account for having advised Defendant Palmer of his Constitutional rights as provided for in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Doc. 12 at 1-2 (emphasis and footnote added).

---

[3] From the actual report: "I asked Mr. Palmer why he was moving around so much and he stated that he did not want to be searched again, and he was giving me what I was looking for. I advised Mr. Palmer to place any contraband on the seat next to him until I was able to retrieve it." Doc. 19-1 at 6. "Upon arrival at the Hinesville Police Department, Mr. Palmer exited the vehicle and I observed a bag of marijuana on the seat next to where he was sitting." *Id.*

Opposing, the Government disputes very little of that recitation, but proffers a different interpretation of the "interrogation" fact:

> On the way to the jail, the officer informed Defendant that he would be thoroughly searched upon arrival at the jail. No question was asked of Defendant, the statement was merely a preview or explanation of standard jail booking procedure. After the officer made the statement to Defendant, he could hear Defendant moving around in the back of the car and could hear what sounded like "plastic crinkling." It was at that point that the officer *asked a question* of Defendant -- specifically why he was moving around so much. Defendant then responded that he did not want to be searched and was giving up what they were looking for. Officers retrieved a bag of marijuana from the backseat of the patrol car after they arrived at the jail.

Doc. 19 at 9-10 (emphasis added).

In essence, the Government insists that Allmond at most posed a precautionary question -- why was Palmer "moving around so much?" -- which did not rise to an interrogation. Doc. 19 at 8-11.

Since Palmer rests only on Allmond's facts, the Court need only apply the law to them to determine whether a *Miranda*-triggering *interrogation* occurred. Note, in that regard, that the defendant

> bears the burden of establishing that he was in custody and that his statements were made in response to government questioning. *See United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). The government bears the burden of proving that defendant's statements were voluntarily given. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). Here, it is uncontested that defendant was in

4

custody at the time of his post-arrest statements. Thus, the issues to be addressed are whether defendant's post-arrest statements . . . were the product of *interrogation*, and if so, were the statements freely and voluntarily made after defendant knowingly, intelligently, and voluntarily waived his rights.

*United States v. Hardeman*, 2016 WL 8671972 at *10 (N.D. Ga. Mar. 11, 2016) (footnote omitted; emphasis added). What constitutes an interrogation is somewhat of a nuanced determination. *Miranda*, after all,

> "was never meant to apply to all statements taken by the police after a person has been taken into custody, but only to those statements that result from 'express questioning or its functional equivalent.'" *United States v. Springfield*, [2007 WL 1140912 at *3 (S.D. Ga. Apr. 13, 2007)] (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). Thus, the "special procedural safeguards outlined in *Miranda* are required . . . where a suspect in custody is subjected to interrogation," which "must reflect a measure of compulsion above and beyond that inherent in custody itself." [*Rhonde Island v. Innis*, 446 U.S. 291, 300 (1980)] (footnote omitted).

*Id.*

"Interrogation" refers to both express questioning by the police and "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301. For that matter, the

5

latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.

*Id.*

An interrogation, then, encompasses only "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." *Id.* at 302. It follows that police chit-chat merely triggering an uninvited, incriminating response from the defendant does not fit that bill. *Id.* at 303. Nor is "subtle compulsion," unless the "suspect's incriminating response was the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." *Id.*; *see also United States v. Moore*, ___ F. Supp. 3d ___, 2017 WL 384426 at *4 (S.D. Fla. Jan. 26, 2017) (interrogating detective's expression of personal disappointment was a purposeful continuation of a preplanned strategy that had been utilized throughout defendant's interview, and thus went beyond "subtle compulsion," violating defendant's *Miranda* rights).

Put another way, at-scene, transport-based, and "what did you just say?" questions do not trigger *Miranda*. *See United States v. Gonzales,* 121 F.3d 928, 940 (5th Cir. 1997) ("when a suspect spontaneously makes a statement, officers may request clarification of ambiguous statements without running afoul of the Fifth Amendment."), o*verruled in part on other grounds by United States v. O'Brien*, 560 U.S. 218 (2010); *United States v. Rommy*, 506 F.3d 108, 133–34 (2d Cir. 2007) ("[A]bsent extraordinary circumstances, a court may generally conclude that follow-up questions asking only for volunteered information to be repeated or spelled do not constitute interrogation."); *United States v. Payne*, 954 F.2d 199, 202 (4th Cir.1992) ("the *Innis* definition of interrogation is not so broad as to capture within *Miranda's* reach all declaratory statements made by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges."); *United States v. Koontz*, 143 F.3d 408, 411 (8th Cir. 1998) (attempt to seek clarification of a defendant's remarks, during an interview requested by the defendant, are not the products of interrogation); *State v. Gibson*, 422 N.W.2d 570, 577 (Neb. 1988) (conceding it may be on the "on the cutting edge

of immeasurable imprudence," yet finding no interrogation where officer said, "'Oh, look what I found'" after discovering a loaded revolver in the defendant's presence).[4]

The same must be said for questions aimed at uncovering safety and evidentiary-loss risks. *See United States v. Newsome*, 475 F.3d 1221 (11th Cir. 2007) (under *Miranda* public-safety exception, officer permissibly asked arrested defendant, before *Miranda* warnings, "is there anything or anyone in the room I should know about," to which defendant disclosed the location of a gun) (citing *New York v. Quarles*, 467 U.S. 649, 657 (1984) ("the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination.")); *United States v. Jackson*, 280 F.3d 403, 405-406 (4th Cir. 2002) (finding that an officer was "fully justified" in inquiring about weapons after making a traffic stop).

---

4   *Miranda*, then, "covers only police conduct likely to be coercive . . . which cannot be said of a question that does nothing more than seek clarification of what the defendant has already volunteered." LAFAVE , 2 CRIM. PROC. § 6.7(d) (4th ed. Dec. 2016); *compare Townsend v. Sain*, 372 U.S. 293, 307-08 (1963) (confession can be found involuntary if officers knowingly exploited a "truth-serumed" suspect); *Brewer v. Williams*, 430 U.S. 387, 406 (1977) (Sixth Amendment right to counsel violated when detective gave "Christian Burial Speech" to defendant known to be a deeply religious, former mental patient).

8

For cases falling between those two poles, Courts inquire whether police deployed things like a "lengthy harangue" or "particularly evocative" remarks likely to elicit an incriminating response. If not, *Miranda* does not apply. *Innis*, 446 U.S. at 303 ("Given the fact that the entire conversation appears to have consisted of no more than a few off hand remarks, we cannot say that the officers should have known that it was reasonably likely that Innis would so respond. This is not a case where the police carried on a lengthy harangue in the presence of the suspect. Nor does the record support the respondent''s contention that, under the circumstances, the officers' comments were particularly 'evocative.'").

Here Allmond merely inquired what Palmer was doing while handcuffed in his squad car. By then it was clear to both men that Palmer was being transported to the police station under arrest on a gun charge *after* being found in a marijuana-smoke-filled vehicle. In light of the plastic-crinkling sound and common knowledge that contraband often is transported in plastic baggies, the question Allmond posed cannot be said to have crossed the *Innis* threshold.

Palmer, for that matter, supplies no facts on his own to even suggest otherwise, though Local Rule 12.1 expressly enabled him to do so.

While *Miranda* warnings were not required to be given to Palmer, the government must still demonstrate that he voluntarily made the statements in question. That inquiry is made in light of the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *Hubbard v. Haley*, 317 F.3d 1245, 1252-53 (11th Cir. 2003)). The Court thus asks whether a defendant's statement was the product of an essentially free and unconstrained choice, since "[t]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception." *Connelly*, 479 U.S. at 170. *United States v. Bhatt*, 160 F. Supp. 3d 1359, 1363 (N.D. Ga. 2016). "Among the factors the Court must consider are the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police." *United States v. Villaverde-Leyva*, 2010 WL 5579825 at * 11 (N.D. Ga. Dec. 9, 2010) (cite omitted). Palmer raises no issue on that score.

His suppression motion (doc. 12) must therefore be **DENIED** and the June 7, 2017 hearing in this case is **CANCELLED**.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 5th day of June, 2017.

_/s/ G. R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA